UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| JEUL SLADE, | Case No. 20-cv-2393 DMS (KSC) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| EMPIRE TODAY, LLC, a Delaware corporation; and DOES 1 through 50, inclusive, | |
| Defendants. | |

Pending before the Court is Defendant Empire Today, LLC's motion to compel arbitration. Plaintiff Jeul Slade filed a response in opposition to the motion, and Defendant filed a reply. Upon order of the Court, Defendant filed a supplemental brief, and Plaintiff filed an opposition to that supplemental brief. For the reasons set forth below, Defendant's motion is granted.

**I.**

**BACKGROUND**

**A.   Factual Background**

On March 19, 2018, Defendant Empire Today, LLC ("Defendant" or "Empire Today"), a home improvement and home furnishings company, hired Plaintiff Jeul Slade ("Plaintiff" or "Slade") as a Satellite Operations Manager at Defendant's location in San Diego County. (Declaration of Geoffrey Q. Nuneman ["Nuneman

– 1 –

Decl."] ¶ 5, ECF No. 7-2; Declaration of Jeul Slade ["Slade Decl."] ¶ 2, ECF No. 9-1.) Plaintiff's claim in this case arises out of his firing by Empire Today after he allegedly contracted the swine flu virus on a work-related trip. (Compl. ¶¶ 10–13, ECF No. 1-2.)

Defendant claims Plaintiff electronically signed an arbitration agreement (the "Arbitration Agreement" or "Agreement") with Empire Today on or about March 15, 2018. (ECF No. 7-1 at 2 (citing Nuneman Decl. ¶ 7); ECF No. 7-2, Ex. A.) The Agreement reads, in relevant part, as follows:

> [Y]ou and [Empire] mutually agree that all disputes, claims, or controversies of any kind or type, whenever they may arise, between [Empire] and you that could be brought in a court will be submitted exclusively to final and binding arbitration as specified herein and pursuant to the Employment Arbitration Rules of the American Arbitration Association (AAA) . . . Examples of claims subject to arbitration pursuant to this Agreement include, but are not limited to, claims under: . . . any state or local anti-discrimination or wage and hour laws; any other federal, state, or local law, ordinance, or regulation; or any claim based on any public policy, contract, tort, or common law.

(Arbitration Agreement, ECF No. 7-2, Ex. A, at 1.) The Agreement further states:

> I understand and agree that mandatory, binding arbitration will be the sole and exclusive means for resolution of all disputes as described in this Agreement whenever they may arise. I recognize that this arbitration shall be in lieu of trial by jury. I acknowledge that I have had an opportunity to review the Employment Arbitration Rules (available through AAA's website at: www.adr.org) and a copy of this Agreement and that I was given a reasonable time to review and consider this Agreement and the Employment Arbitration Rules and to consult with an attorney of my choosing before signing this Agreement.

(*Id.* at 3.) Finally, the Agreement provides that its terms "survive the termination of [Slade's] employment with [Empire Today]." (*Id.*)

### B. Procedural History

On October 29, 2020, Plaintiff Jeul Slade filed this action in the Superior Court of the State of California, San Diego County, alleging the following causes of

– 2 –

action: (1) disability discrimination; (2) failure to accommodate disability; (3) failure to engage in interactive process; (4) retaliation; (5) failure to prevent discrimination and harassment; (6) wrongful termination in violation of public policy; and (7) violation of California Business & Professions Code, § 17200 *et seq*. (ECF No. 1-2.) Defendant Empire Today removed the case to this Court on December 8, 2020. (ECF No. 1.)

On November 20, 2020, Plaintiff filed a separate class action complaint against Defendant in Alameda County Superior Court alleging violations of the disclosure provisions of the Fair Credit Reporting Act. (ECF No. 19-2, at 6–18.) Defendant removed that case to the United States District Court for the Northern District of California on December 22, 2020. (*Id.* at 22–24.)

Defendant then moved to compel arbitration in both actions based upon an arbitration agreement to which Defendant claims Plaintiff consented. (*See* ECF No. 7; *see also* ECF No. 19-2, at 52–65.) Plaintiff filed near-identical oppositions to these motions in both courts. (*Compare* ECF No. 9, *with* ECF No. 19-2, at 67–91.) Plaintiff argues Defendant has failed to demonstrate either that (1) the electronic signature was made by Plaintiff, or (2) a valid arbitration agreement exists. (ECF No. 9, at 9–13; ECF No. 19-2, at 75–79.)

On February 17, 2021, Judge Yvonne Gonzalez Rogers of the Northern District of California denied Defendant's motion to compel arbitration without prejudice on grounds that "[u]nder the applicable summary judgment-like standard, there is a material dispute of fact as to the formation of the agreement to arbitrate on the current record." *Slade v. Empire Today, LLC*, No. 4:20-cv-09301, Dkt. No. 10, at 1 (N.D. Cal. Feb. 17, 2021) (citations omitted). Judge Gonzalez Rogers also granted the parties "leave to take limited discovery based on the issue of contract formation only," and gave Defendant until May 28, 2021, to file a renewed motion to compel arbitration based on that discovery. *Id.* at 2.

///

On February 23, 2021, Defendant filed a Motion to Stay Proceedings and Discovery in this action until the parallel arbitration agreement issue could be resolved in the Northern District action. (ECF No. 19.) The Court stayed the case on April 14, 2021. (ECF No. 24.) On April 22, 2021, the case in the Northern District was remanded to the California Superior Court, and the motion to compel before Judge Gonzalez Rogers was denied as moot. (*See* ECF Nos. 24–25.) The Court vacated the stay of the present case on April 30, 2021. (ECF No. 29.) The Court held a status conference on May 6, 2021, during which it ordered supplemental briefing in light of the discovery conducted in the Northern District. (ECF Nos. 30–31.) Defendant filed its supplemental brief on May 14, 2021. (ECF No. 32.) Plaintiff filed a response in opposition on May 27, 2021. (ECF No. 33.) The matter is fully briefed and submitted.

## II.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of arbitration agreements involving commerce. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). The Supreme Court has enunciated a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) ("The overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). "The FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). Accordingly, the Court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho*

*Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The Court must also determine "whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce" and is therefore governed by the FAA. *Concat LP v. Unilever, PLC*, 350 F.Supp. 2d (N.D. Cal. 2004) (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)). If these factors are met, the Court must enforce the arbitration agreement according to its terms. 9 U.S.C. § 4. However, "if there is a genuine dispute of material fact as to any of these queries, a district court should apply a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Jenkins v. Sterling Jewelers, Inc.*, 17-cv-1999-MMA (BGS), 2018 WL 922386, at *2 (S.D. Cal. Feb. 16, 2018) (internal quotation omitted); *see also Porter v. Loyalty Mortgage, Inc.*, 07-cv-1930-JLS (BLM), 2008 WL 11509118, at *2 (S.D. Cal. Jan. 18, 2008) (citing 9 U.S.C. § 4).

Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted). A court must therefore determine whether there is an agreement to arbitrate before ordering arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996); *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) ("[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision."). The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. District courts apply state law principles of contract formation and interpretation in determining which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *Arthur Anderson LLP v. Carlisle,* 556 U.S. 624, 630–31 (2009); *see also*

*Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, courts are directed to resolve any "ambiguities as to the scope of the arbitration clause itself ... in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

## III.
## DISCUSSION

Defendant argues Plaintiff's claims must be arbitrated subject to the terms of the Arbitration Agreement under the FAA. In response, Plaintiff contends no arbitration agreement exists, and even assuming it does, Defendant cannot enforce the arbitration provisions because they are procedurally and substantively unconscionable. Plaintiff further asserts the FAA does not apply because his employment with Empire Today did not involve interstate commerce. Finally, Plaintiff argues his claim under California's Unfair Competition Law is inarbitrable.

### A.  Applicability of the FAA

Plaintiff argues his employment did not involve interstate commerce because he only worked out of Empire Today's San Diego County office and because his role was confined to overseeing sales within Southern California. (ECF No. 9 at 22 (citing Slade Decl. ¶¶ 2–3).) The Court disagrees.

The FAA only applies to contracts "involving commerce." 9 U.S.C. § 2. The term "involving commerce" in the FAA is the functional equivalent of "affecting commerce." *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–274 (1995). Indeed, "the words 'involving commerce' evidence the congressional intent to regulate to the full extent of its commerce power." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001) (citing *Allied–Bruce*, 513 U.S. 265). With only a
/ / /

few narrow exceptions, none of which applies here, the FAA applies to contracts of employment. *Circuit City*, 532 U.S. at 121. Accordingly, the FAA applies here.

        **B.**     **Existence of an Agreement to Arbitrate**

The question here is whether Empire Today has shown that Plaintiff agreed to the terms of the Arbitration Agreement. Plaintiff argues no legally binding agreement to arbitrate exists because he never received, reviewed, or signed the Arbitration Agreement. "Although challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (internal citations omitted). A party seeking to compel arbitration must "prov[e] the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). State contract law controls the issue of whether the parties have agreed to arbitrate. *Id.* A party's signature indicates its assent to the contract. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224 (Cal. 2012) (stating acceptance of arbitration agreement may be express where party signs agreement and arbitration clause may be binding even if party never read the clause). The "burden of authenticating an electronic signature is not great." *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 844 (Cal. Ct. App. 2014)

Defendant presents the Court with the following evidence regarding contract formation in this case: three declarations from Mr. Geoffrey Nuneman, Empire Today's Vice President of Human Relations and custodian of Defendant's human resources records, an electronically signed and counter-signed version of the Arbitration Agreement, Plaintiff's resume containing Plaintiff's email address, the email message containing Plaintiff's personalized login credentials, numerous documents explaining the security features and functioning of the Taleo onboarding system used by Empire Today, and documentation tracking the dates and times at

which Plaintiff accessed and signed his employee onboarding forms, including the Arbitration Agreement. (ECF Nos. 7-2, 14-1, 32-1.)[1]

Plaintiff insists he never received, reviewed, or signed the Arbitration Agreement. (ECF No. 9 at 10–11 (citing Slade Decl. ¶ 6).) Plaintiff attests that around a week prior to his hiring, he logged onto an online portal and filled out "volumes of documents and pre-employment forms . . . as quickly as he could." (Slade Decl. ¶¶ 4, 7.) However, Plaintiff claims that in reviewing and executing these preemployment documents, he was not provided with an arbitration agreement. (*Id.* ¶ 6.) He also asserts that had he been aware of such an agreement, he would have declined to sign it. (*Id.*) Finally, Plaintiff argues that inconsistencies between the dates and purported electronic signatures on the Arbitration Agreement undermine Defendant's argument that Plaintiff assented to the terms of the contract. (ECF No. 9 at 10–13 (citing ECF No. 7-2, Ex. A).) The Court is not convinced.

District courts apply a summary judgment-like standard and rule as a matter of law when there are no genuine issues of material fact regarding the existence of an arbitration agreement. *Olivas v. Hertz Corp.*, 17-cv-01083-BAS-NLS, 2018 WL 1306422, at *8 (S.D. Cal. March 12, 2018) (citing *Three Valleys*, 925 F.2d at 1141).

---

[1] Plaintiff objects to these documents on hearsay and foundation grounds. (ECF No. 10.) The objections are overruled. Mr. Nuneman, as custodian of records, has reviewed and authenticated the records. The documents are admissible as business records. *See* Fed. R. Evid. 803(6); *see also In re Harms*, 603 B.R. 19, 29 (B.A.P. 9th Cir. 2019) (citing *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991) (discussing Rule 803(6) requirements); *Moore v. Universal Prot. Serv., LP*, No. EDCV192124JGBSPX, 2020 WL 2518030, at *5 (C.D. Cal. May 15, 2020) (admitting arbitration agreements with electronic signature, date, and time stamp as business records); *Starace v. Lexington Law Firm*, No. 118CV01596DADSKO, 2019 WL 2642555, at *4 (E.D. Cal. June 27, 2019) (finding business records admissible to show arbitration agreement); *Trevino v. Acosta, Inc.*, No. 17-CV-06529 NC, 2018 WL 3537885, at *4 (N.D. Cal. July 23, 2018) (noting that electronically signed arbitration agreements are admissible where human resources personnel familiar with the record-keeping practice authenticate the record).

A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 255, the nonmoving party's opposition must consist of more than unsupported allegations or denials. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Defendant prevails under this standard because no reasonable factfinder could find for Plaintiff on the basis of the evidence presented to the Court. The evidence demonstrates that Slade electronically signed the Arbitration Agreement. In his multiple declarations to this Court, Geoffrey Nuneman explains the technical details of Empire Today's employee onboarding process. (*See* Supplemental Declaration of Geoffrey Q. Nuneman ["Supp. Nuneman Decl."], ECF No. 14-1; *see also* Second Supplemental Declaration of Geoffrey Q. Nuneman ["Second Supp. Nuneman Decl."], ECF No. 32-1.)

Empire Today uses an online portal called Taleo to onboard employees. (Supp. Nuneman Decl. ¶ 3.) The Taleo onboarding process begins when an applicant provides his email address to Empire Today. (Supp. Nuneman Decl. ¶ 3; Second Supp. Nuneman Decl. ¶ 5.) Upon receipt of the applicant's email address, Empire Today emails him a confidential link to the Taleo portal along with a personalized Taleo username. (*Id.*) When the applicant logs into the portal, he is prompted to create a password which he must use to access and sign the online forms, including the Arbitration Agreement. (*Id.*) Each applicant is also assigned a unique "eSign ID" number that is automatically affixed to every document an applicant completes, along with his electronic signature and the date on which he signed the document. (*Id.*) The electronic signature and all other information an applicant enters into documents on Taleo always appears in a blue font. (Second Supp. Nuneman Decl. ¶ 5.) Likewise, the electronic signature and all other information Empire Today

enters into documents through the portal appears in a green font. (*Id.*) An applicant cannot log into Taleo without a password. (*Id.* ¶ 7; ECF No. 33-1, Ex. M.) Nor can an applicant electronically sign a document on Taleo without authenticating his identity by re-entering his password into the portal for each electronic signature placed on a document. (*Id.*) Upon the signing and completion of a document, Taleo stores the signed document as a PDF file. (*Id.*) There is no mechanism by which users may modify the stored versions of these documents. (*Id.*)

Mr. Nuneman states that Empire Today conducted its routine onboarding process with Slade. (Supp. Nuneman Decl. ¶ 4.) When Slade applied for a position with Empire Today, he submitted a resume listing his email address as "jay_slade@cox.net." (Second Supp. Nuneman Decl. ¶ 5; ECF No. 33-1, Ex. K.) On March 14, 2018 at 4:23 p.m., Defendant sent an email containing a Taleo username and a link to the portal to Plaintiff at the email address listed on his resume. (Supp. Nuneman Decl. ¶ 3; ECF No. 14-1, Exs. B, C.) At 5:58 p.m. that same day, "Employee Slade, Jeul" created a password and logged into Taleo through that link. (Supp. Nuneman Decl. ¶ 4; ECF No. 14-1, Ex. C.) No one at Taleo or Empire Today has access to the password created for the account linked to the email address "jay_slade@cox.net." (Second Supp. Nuneman Decl. ¶ 8; *see also* ECF No. 32-1, Ex. N.) The user logged into Taleo the following day at 10:09 a.m. and completed his first onboarding form for employment with Empire Today at 10:45 a.m. (Supp. Nuneman Decl. ¶ 4; ECF No. 14-1, Ex. C.)

The user "Employee Slade, Jeul" completed the "Employee CA Arbitration Agreement" through the Taleo portal on March 15, 2018 at 11:07 a.m. (ECF No. 14-1, Ex. G.) Plaintiff's electronic signature, unique eSign ID number ("5FU37YAVU-27L7I2IOY"), and the signing date ("3/15/18") appear in blue text on the electronic signature page of the Arbitration Agreement. (ECF No. 7-2, Ex. A.) Mr. Nuneman countersigned the Arbitration Agreement on behalf of Empire Today on March 21, 2018. (Supp. Nuneman Decl. ¶ 7; ECF No. 7-2, Ex. A; ECF

No. 14-1, Ex. G.) Mr. Nuneman's electronic signature and the signing date ("3/21/18") appear in green text on the Agreement's electronic signature page. (*Id.*)

Slade's denial, by contrast, is unsupported by corroborating evidence. The denial in his declaration is insufficient to create a dispute of material fact. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."). Slade seems to argue that the date ("3/21/18") appearing next to his name on the fourth page of the Arbitration Agreement invalidates Defendant's assertion that Plaintiff signed the document on March 15, 2018. (*See* ECF No. 9 at 10, 12; *see also* ECF No. 33 at 2, 6.) On the page in question, however, Slade's name is displayed in blue text, reflecting his status as the signatory of the agreement, and the date "3/21/18" is displayed in green text, reflecting the date upon which Mr. Nuneman countersigned and the agreement became fully executed. (Supp. Nuneman Decl. ¶ 7; ECF No. 7-2, Ex. A.) Plaintiff's argument is unavailing. The Court therefore finds that Empire Today has demonstrated the existence of an agreement to arbitrate.

## C. Enforceability of the Arbitration Agreement

Plaintiff contends the Arbitration Agreement is unenforceable on two separate grounds. First, Plaintiff argues the Agreement is both procedurally and substantively unconscionable. Second, Plaintiff argues the Agreement is illusory because it contains a provision that allows the arbitrator to modify its terms.

### 1. Unconscionability

Under California law, a court may refuse to enforce a provision of a contract if it finds that the provision was "unconscionable at the time it was made." Cal. Civil Code § 1670.5(a). Unconscionability has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (Cal. 2015). An arbitration agreement must be both

procedurally and substantively unconscionable for a court to refuse to enforce the contract or clause. *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (Cal. 2016). The party opposing arbitration has the burden of proving the arbitration agreement is unconscionable. *Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*, 197 Cal. App. 4th 1146, 1153–54 (Cal. Ct. App. 2011). For the reasons explained below, the Court finds that the Arbitration Agreement in this case is not unconscionable.

       a.      Procedural Unconscionability

Plaintiff argues the Arbitration Agreement is procedurally unconscionable for two reasons. First, Plaintiff asserts that he was never provided a copy of the applicable arbitration rules.[2] However, "[u]nder California law, parties to an agreement can incorporate the terms of another document into the agreement by reference." *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (Cal. Ct. App. 1994). As such, the Ninth Circuit has held that the mere incorporation by reference of the AAA rules into an arbitration agreement does not support a finding of procedural unconscionability. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017); *see also Baltazar*, 62 Cal. 4th at 1245–46 (rejecting claim that failure to provide employee with a copy of the AAA rules for employment arbitration disputes constitutes procedural unconscionability where those rules were incorporated by reference into the arbitration agreement). Here, the Arbitration Agreement provides that Slade and Empire Today "mutually agree that all disputes, claims, or controversies . . . will be submitted exclusively to final and binding arbitration . . . pursuant to the Employment Arbitration Rules of the [AAA]." (Arbitration Agreement, ECF No. 7-2, Ex. A, at 1.) Therefore, the incorporation of the AAA rules does not render the Agreement here procedurally unconscionable.

---

[2] Plaintiff also argues the Arbitration Agreement is procedurally unconscionable because he was never provided a copy of the Agreement. However, as discussed, the record shows Plaintiff received and signed the agreement. *See supra* Section III.B.

– 12 –

Second, Plaintiff argues that the Arbitration Agreement is an oppressive contract of adhesion. "Procedural unconscionability may be proven by showing oppression, which is present when a party has no meaningful opportunity to negotiate terms or the contract is presented on a take it or leave it basis." *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1246 (Cal. Ct. App. 2011) (citations omitted). "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (Cal. 2000). An arbitration clause is a contract of adhesion if "it lies within a standardized form drafted and imposed by a party with superior bargaining strength, leaving plaintiffs with only the option of adhering to the contract or rejecting it." *Magno v. The College Network, Inc.*, 1 Cal. App. 5th 277, 286 (Cal. Ct. App. 2016). The fact that an arbitration agreement is adhesive does not necessarily render it unconscionable. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807 (Cal. 1981). Rather, if the contract is deemed adhesive, "the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial— operate to render it [unenforceable].'" *Armendariz*, 24 Cal. 4th at 113 (quoting *Scissor-Tail*, 28 Cal.3d at 820). "[An] arbitration agreement is procedurally unconscionable where it is a standard contract of adhesion imposed and drafted by the employer, it is presented to the employee on a take-it-or-leave-it basis, and the employee's signature is a precondition for employment." 6 Cal. Jur. 3d *Arbitration and Award* § 45 (citing *Sanchez v. Carmax Auto Superstores California, LLC*, 224 Cal. App. 4th 398 (Cal. Ct. App. 2014)). Finally, Plaintiff has the burden of proving unconscionability. *Mission Viejo Emergency Med. Assocs.*, 197 Cal. App. 4th at 1153–54.

Here, the Agreement was a standard form prepared by the Defendant employer. It was also presented to Plaintiff in a binary fashion: he could either agree to the Agreement or reject it. As such, the Arbitration Agreement is a contract of adhesion. However, that fact, in itself, does not make the contract unconscionable.

As Defendant points out, Plaintiff fails to provide any evidence that Empire Today predicated Slade's employment on agreeing to the contract. Instead, the Agreement gave Slade the opportunity to check a box indicating that he "elect[s] to opt out of the Arbitration Agreement." (Arbitration Agreement, ECF No. 7-2, Ex. A, at 4.) Nothing in the record supports a finding that Plaintiff's assent to the Agreement was a precondition to employment. Accordingly, the Court finds that the Agreement's adhesive nature did not create procedural unconscionability.

### b. Substantive Unconscionability

An arbitration agreement must "ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1080 (Cal. 2003). An arbitration agreement is substantively fair where it "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Armendariz*, 24 Cal 4th. at 102. Plaintiff challenges the substantive fairness of the Arbitration Agreement under the second and fifth factors.

Plaintiff first argues the Agreement fails to satisfy the second *Armendariz* requirement because it does not provide for sufficient discovery. However, the Agreement provides that each party is limited to ten written interrogatories and ten requests to produce but allows the arbitrator to "authorize additional discovery" beyond those limits "if a party establishes that such discovery is necessary for a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (Arbitration Agreement, ECF No. 7-2, Ex. A at 3.) The *Armendariz* court noted that even if the parties to an arbitration agreement agreed to limit themselves to less than the full range of discovery available under the California Code of Civil Procedure, the court should "infer that when parties agree to arbitrate

statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures [including discovery] as are necessary to vindicate that claim." 24 Cal. 4th at 106. The Court finds that the Agreement's provision allowing the authorization of additional discovery satisfies the second *Armendariz* requirement.

Plaintiff further argues the Agreement is substantively unconscionable because the applicable arbitration rules require Plaintiff to bear unique arbitration costs, in violation of the fifth *Armendariz* requirement. As previously noted, the Agreement incorporates the AAA Employment Arbitration Rules (the "Rules") by reference. (Arbitration Agreement, ECF No. 7-2, Ex. A, at 1.) The Rules' "Costs of Arbitration" section requires individuals bringing cases to pay a $300 filing fee. (AAA Employment/Workplace Fee Schedule, ECF No. 7-3, Ex. B.)[3] In cases filed by an individual, the Rules also require company parties to pay both a $1,900 to 2,500 filing fee and a $750 to 1,000 case management fee. (*Id.*) Individuals are not required to pay any portion of the case management fee. (*Id.*)

These fees are substantively fair. In *Armendariz*, the California Supreme Court held that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." 24 Cal. 4th at 110–111 (emphasis original). However, "[t]here is no doubt that parties appearing in federal court may be required to assume the cost of filing fees and other administrative expenses, so any reasonable costs of this sort that accompany

---

[3] The Rules also require both parties to pay $300 where a case is held in abeyance for one year. (AAA Employment/Workplace Fee Schedule.) However, nothing in the record indicates that such an abeyance fee would be imposed in this case. The Court declines to find the Agreement to be substantively unconscionable on the basis of a conjectural fee that might be imposed if Plaintiff fails to prosecute his own case before the arbitrator.

arbitration are not problematic." *Id.* at 108 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1484 (D.C. Cir. 1997)). The filing fee in this case is the same *type* that Plaintiff would be required to pay to bring his claim in state or federal court. Therefore, the filing fee does not violate *Armendariz*. Accordingly, the Court rejects Plaintiff's argument that the Arbitration Agreement is substantively unconscionable.

**2. Illusoriness**

Plaintiff argues the Arbitration Agreement is illusory. California courts treat an agreement as illusory, and therefore invalid, where one of the parties assumes no obligation under the contract. *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal. App. 4th 86, 94 (Cal. Ct. App. 2002). Plaintiff cites cases holding that contracts which allow one party to unilaterally modify the terms of the agreement are illusory. (ECF No. 9 at 13 (citing *Sparks v. Vista Del Mar Child & Family Servs.*, 207 Cal. App. 4th 1511, 1523 (Cal Ct. App. 2012); *Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (Cal. Ct. App. 2016)).) But the Agreement at issue in this case does not contain a unilateral modification clause. Rather, the Arbitration Agreement provides that "Neither [Slade] nor [Empire Today] may alter, modify, or cancel this Agreement unilaterally." (Arbitration Agreement, ECF No. 7-2, Ex. A at 3.) Plaintiff attempts to re-frame the Agreement's severability provisions as a unilateral modification clause. The Arbitration Agreement's section on "Severability and Related Issues" states:

> If an arbitrator finds any other provision of this agreement unenforceable, the arbitrator shall interpret or modify this Agreement, to the extent necessary, for it to be enforceable [. . .] This Agreement shall be self-amending; meaning if a provision is deemed unlawful or unenforceable, that provision and the Agreement automatically, immediately and retroactively shall be amended, modified and/or altered to be enforceable.

(Arbitration Agreement, at 2.) This provision does not allow Defendant to modify the terms of the contract. Instead, it allows the *arbitrator* to interpret or modify the terms of the agreement to ensure the Agreement's enforceability.

– 16 –

Even if the term at issue were construed as a unilateral modification clause, it would still survive. California courts have repeatedly held that an otherwise void arbitration agreement containing a unilateral modification clause is not illusory where the contract contains an implied covenant of good faith and fair dealing. *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (Cal. Ct. App. 1998) ("[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings."); *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 706 (Cal. Ct. App. 2013) ("[I]t has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory because the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract."). Here, the AAA Employment Arbitration Rules, as incorporated into the Arbitration Agreement, explicitly provide that "Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith." (Arbitration Rules, ECF No. 7-3, Ex. A, at 17.) The Rules further provide that arbitrators shall be subject to disqualification for "partiality or lack of independence" or "inability or refusal to perform his or her duties . . . in good faith." (*Id.*) The explicit good faith requirement is sufficient to prevent the arbitrator from modifying the agreement in a manner that would frustrate the purpose of the contract. The neutrality requirement similarly prevents the arbitrator from modifying the Agreement in a manner that would erode the mutuality of the contract in favor of Defendant or otherwise unfairly harm Plaintiff's interests. The Court therefore finds that the Arbitration Agreement is not illusory and is enforceable.

D. **Arbitrability**

Defendant contends Plaintiff's claims are covered by the Arbitration Agreement. Plaintiff argues that his Unfair Competition Law claim arising under

California Business & Professions Code, § 17200 *et seq*. ("UCL") is not arbitrable. The Court disagrees.

Plaintiff argues that his UCL claim is inarbitrable because it constitutes a request for public, rather than private, injunctive relief. In *Broughton v. Cigna Healthplans of California*, the California Supreme Court held that claims for public injunctive relief are not arbitrable. 21 Cal. 4th 1066, 1077 (Cal. 1999); *see also Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315–316, 318, 320 (Cal. 2003) (extending the *Broughton* rule to claims for public injunctive relief under the UCL). However, the FAA preempts any "state law [that] prohibits outright the arbitration of a particular type of claim." *AT&T Mobility LLC v. Concepcion*, 563 U.S. U.S. 333, 131 (2011). In *Ferguson v. Corinthian Colleges, Inc.*, the Ninth Circuit held the California rule against arbitrating UCL claims for public injunctive relief is "clearly irreconcilable" with *Concepcion* because it "prohibits outright arbitration of a particular type of claim." 733 F.3d 928, 934 (9th Cir. 2013). As such, the rule is preempted by the FAA. *Id.* at 937. Accordingly, the Court finds that all of Plaintiff's claims are arbitrable.

## IV.
## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration. Plaintiffs' claims against Defendant shall proceed in arbitration. The Court stays the litigation to permit arbitration to proceed. Within 14 days of the completion of the arbitration proceedings, the parties shall jointly submit a report advising the Court of the outcome of the arbitration and request to dismiss the case or vacate the stay.

**IT IS SO ORDERED.**

Dated: July 7, 2021

_____
Hon. Dana M. Sabraw
United States Chief District Judge